UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 01-2325(DSD/SRN)

Hattie Webb,

Plaintiff,

v. **ORDER**

Northwest Airlines, Inc.,

Defendant.

Patrick W. Noaker, Esq. and Reinhardt & Anderson, E 1000 First Bank Building, 332 Minnesota Street, St. Paul, MN 55101, counsel for plaintiff.

Donald M. Lewis, Esq., Joseph G. Schmitt, Esq., Sandra L. Conroy, Esq. and Halleland, Lewis, Nilan, Sipkins & Johnson, 220 Sixth Street South, Suite 600, Minneapolis, MN 55402, counsel for defendant.

This matter is before the court upon the motion for summary judgment of defendant Northwest Airlines, Inc. ("NWA"). After a review of the file, records and proceedings herein, and for the reasons stated, the court grants defendant's motion.

**BACKGROUND**

This case involves allegations of racial discrimination and reprisal. In 1987, defendant hired plaintiff Hattie Webb, an African-American woman, as a part-time keypunch operator. On her application for employment, plaintiff indicated that she had not

FILED 4-7-03
Richard D. Sletten, CLERK
Judgment Ent'd. 4-7-03
Deputy Clerk's Initials ______

been convicted of a felony even though plaintiff had been convicted of mail fraud prior to applying to work for defendant. Defendant asserts that, pursuant to company policy, it would not have hired plaintiff or would have terminated her post-hire if it had known about the false statement on her application.

In 1990, plaintiff became a part-time customer service agent assigned to defendant's ticket counter. While plaintiff was working at the ticket counter on October 13, 1998, a passenger used racial slurs against her and refused to answer security questions. Pursuant to company and Federal Aviation Administration procedures, she notified security personnel. Janet Heaver, a customer service supervisor, investigated the incident. Heaver did not address the passenger's racial slurs. Instead, Heaver issued the passenger a seat upgrade and allowed him to board the plane. Plaintiff claims that after this, Heaver and Scott Roe, a customer service manager, harassed plaintiff and that on October 19, 1998, Heaver and Roe verbally assaulted plaintiff.

In response to this and to Heaver's handling of the racist passenger, plaintiff filed a claim with defendant's equal employment opportunity office. Defendant concluded that Heaver and Roe mishandled the situation and disciplined them. Defendant also participated in equal employment opportunity retraining to reaffirm its commitment to racial equality and notified the racist passenger that he was no longer welcome on defendant's flights. F. Lorie

Humphrey, defendant's employment counsel, informed plaintiff that if she is "subject to retaliation for the filing of the complaint ... [she] should contact [Humphrey's] office immediately." (Schmitt Aff. Ex. E.) Plaintiff claims that because Heaver and Roe were disciplined, they and other Caucasian managers and supervisors were hostile towards her and gave her "the cold shoulder." (Noaker Aff. Ex. 7 at 76.) Plaintiff claims that she attempted to contact Humphrey several times, but that Humphrey did not return her calls.

In December 1998, defendant noticed ticketing irregularities at its Minneapolis-based ticketing counter and investigated its Minneapolis-based ticket counter customer service agents. As a result of this investigation, defendant disciplined plaintiff and two other customer service agents. Defendant claims to have disciplined plaintiff for providing friends with first class upgrades without authorization or upgrade fees. (Schmitt Aff. Exs. H, I, J.) Plaintiff, however, asserts that the scrutiny and discipline she received were in retaliation for the claim she filed with defendant's equal employment opportunity office. (Pl.'s Mem. Opp'n Summ. J. at 4.)

Defendant disciplined plaintiff by offering her a last chance agreement. Plaintiff's union representative was present during the disciplinary meetings. Plaintiff consulted with the union representative prior to signing the agreement on December 17, 1998. Pursuant to the last chance agreement, defendant placed plaintiff

on a two-year probation. The agreement required plaintiff to strictly comply with defendant's rules during the probationary period. If she failed to comply, defendant would terminate her. The last chance agreement also provided that plaintiff "recognizes that just cause exists for her discharge ... [and] agrees not to file any grievance, lawsuit or claim of any nature against [defendant] or its representatives which in any way relate to this Agreement and will withdraw any such claim which may have been filed or are [sic] currently pending." (Schmitt Aff. Ex. J.)

In March 1999, plaintiff asked to be transferred from the ticketing position to a non-ticketing position in the bag check area. Defendant granted plaintiff's request and transferred her to a non-ticketing position, but plaintiff still occasionally worked at the ticket counter. Defendant claims that this commonly occurs when the ticket counter is short-staffed. Plaintiff complained to defendant that scheduling her at the ticket counter was setting her up to violate the last chance agreement. Upon learning of plaintiff's formal complaint, Steve Smith, a department director, ensured that plaintiff was not scheduled at the ticket counter again.

Plaintiff claims that defendant especially scrutinized her dealings with African-American passengers after she signed the last chance agreement. On April 2, 1999, plaintiff assisted four African-American men with a ticketing problem. After plaintiff and

Bonnie Balcome, a supervisor, resolved the problem, they sent the men to the gate. The gate agent saw that the upgrade certificates had not been attached to the tickets and became hostile toward the men. Plaintiff claims that when the ticketing problem was investigated by Marc Gross, a manager, Gross tried to coerce Balcome into lying and blaming plaintiff for the problem so he could terminate her. Plaintiff further claims that when Balcome refused to lie, Gross investigated Balcome and tried to discipline her.

On April 10, 1999, pursuant to company policy, plaintiff refused to upgrade a Caucasian Gold Card member's companion to first class because the Gold Card member was not traveling with the companion. The Gold Card member asked to see a supervisor, and the supervisor upgraded the companion's ticket to first class without charge because plaintiff was rude to the companion. The supervisor also complained to management that plaintiff was rude.

In September 2000, plaintiff upgraded the seat and changed the departure time of Harris Faulkner, an African-American news anchor, without charging her a change fee and without noting an authorization code in the passenger name record. Plaintiff claims she upgraded Faulkner pursuant to supervisor Paulette Stewart's specific direction to do so any time Faulkner traveled. (Webb Dep. at 194.) Plaintiff claims that this is consistent with company policy, which allows for complimentary upgrades of media to

maintain a positive public relationship. (Noaker Aff. Ex. 21.) Plaintiff also points out that Faulkner noticed a supervisor typing something into a computer both times she was upgraded. (Faulkner Dep. at 89-91.)

Defendant claims that it became aware of the September 2000 ticketing irregularity when one of plaintiff's co-workers complained of an irregularity with her ticketing. (Webb Dep. at 207-08.) Defendant denies that Stewart authorized plaintiff to issue Faulkner a complimentary upgrade whenever she flies. (Stewart Tr. at 71-72.) During August 2000, just prior to a flight on which Faulkner was to depart, Stewart had authorized plaintiff to upgrade Faulkner to first class without charge. However, defendant claims that company policy does not permit issuance of complimentary seat upgrades days or even a day prior to departure to allow defendant to first try to sell upgrades to paying passengers. (Schuckman Tr. at 53-55.) Defendant further asserts that Stewart directed plaintiff to enter the authorization code into the passenger name record. (Stewart Tr. at 71-72.)

Upon learning of the ticketing irregularity, defendant questioned plaintiff in the presence of union representatives. Plaintiff acknowledged that she had issued a complimentary upgrade the day prior to Faulkner's flight and had not entered an authorization code into the passenger name record. (Schmitt Aff. Ex. R.) Defendant claims, however, that the passenger name record

reflects that plaintiff issued the complimentary upgrade three days prior to departure and that plaintiff therefore lied to defendant. (Schmitt Aff. Ex. O.)

Defendant terminated plaintiff's employment on October 17, 2000. Plaintiff claims that she was illegally discharged on the basis of her race. (Webb Dep. at 211-12.) Defendant claims that it discharged plaintiff for violating upgrade rules, failing to note an authorization code in the passenger name record, and providing false and misleading information during defendant's questioning of plaintiff. (Def.'s Mem. Supp. Mot. Summ. J. at 8.) Each of these actions violates the last chance agreement.

Defendant also points out that it had prior opportunities to issue disciplinary warnings that would have triggered the termination clause of the last chance agreement. During the term of the last chance agreement, plaintiff did not meet defendant's attendance requirements. Defendant verbally counseled plaintiff instead of issuing a formal disciplinary warning. Nine days later, plaintiff neglected to place an identification tag on the luggage of a passenger who had been identified as potentially high-risk, in violation of FAA rules. Again, defendant counseled plaintiff instead of issuing a formal disciplinary warning.

On May 1, 2001, plaintiff filed a discrimination charge with the Minnesota Department of Human Rights and the Equal Employment Opportunity Commission (EEOC). On November 28, 2001, plaintiff

filed this claim under Title VII and the Minnesota Human Rights Act. Defendant now moves for summary judgment and, after careful consideration, the court grants that motion in its entirety.

## DISCUSSION

### I. Standard for Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In order for the moving party to prevail, it must demonstrate to the court that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)(quoting Fed. R. Civ. P. 56(c)). A fact is material only when its resolution affects the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. See id. at 250.

On a motion for summary judgment, all evidence and inferences are to be viewed in a light most favorable to the nonmoving party. See id. at 255. The nonmoving party, however, may not rest upon

mere denials or allegations in the pleadings, but must set forth specific facts sufficient to raise a genuine issue for trial. See Celotex, 477 U.S. at 324. Moreover, if a plaintiff cannot support each essential element of its claim, summary judgment must be granted because a complete failure of proof regarding an essential element "necessarily renders all other facts immaterial." Id. at 322-23.

## II. After-Acquired Evidence Doctrine

As a preliminary matter, plaintiff is barred from recovering any damages after May 8, 2002, by the after-acquired evidence doctrine. Minnesota and federal courts have held that an employee who lies on an application may be barred from recovering damages on a discrimination or wrongful termination claim after the discovery of that fraud. See McKennon v. Nashville Banner Publ'g Co., 513 U.S. 352, 362 (1995); Chang v. Cargill, Inc., 168 F. Supp. 2d 1003, 1009, n.2 (D. Minn. 2001); Frey v. Ramsey County Cmty. Human Servs., 517 N.W.2d 591, 597 (Minn. Ct. App. 1994). In McKennon, the Supreme Court clarified that the after-acquired evidence doctrine does not bar all recovery for discrimination. McKennon, 513 U.S. at 357. Instead, the doctrine limits damages. "[N]either reinstatement nor front pay is an appropriate remedy." Id. at 362. The doctrine limits recovery of back pay to damages from the date of the unlawful discharge to the date that the evidence of wrongdoing was discovered. Id. In order to rely on this doctrine,

an employer "must first establish that the wrongdoing was of such severity that the employee in fact would have been terminated on those grounds alone if the employer had known of it at the time of the discharge." Id. at 362-63.

In this case, it is undisputed that plaintiff lied on her employment application by concealing the fact that she had been convicted of a felony. It is also undisputed that defendant would not have hired plaintiff or would have terminated plaintiff's employment pursuant to company policy if it had learned of the misstatement on her application. (See Barton Aff. at 3, 5.) Defendant discovered plaintiff's fraud at her deposition on May 8, 2002. Therefore, pursuant to McKennon, plaintiff cannot recover any front pay, cannot seek reinstatement and cannot recover any back pay after May 8, 2002. McKennon, 513 U.S. at 362. The court therefore grants defendant's motion for summary judgment on plaintiff's claim for damages after May 8, 2002.

**III. Statute of Limitations**

The statute of limitations also bars recovery on plaintiff's Title VII claims prior to July 4, 2000, and recovery on her MHRA claims prior to May 1, 2000. Title VII requires that a plaintiff seeking to recover under the statute file a charge with the Equal Employment Opportunity Commission ("EEOC") within 300 days "after the alleged unlawful employment practice occurred." 41 U.S.C. § 2000e-5(e)(1). Under the Minnesota Human Rights Act, the statute

of limitations is one year. Minn. Stat. sec. 363.06, subd. 3. Plaintiff filed a charge on May 1, 2001. Therefore, any Title VII claims prior to July 4, 2000, are untimely and any MHRA claim prior to May 1, 2000, are untimely unless the continuing violation doctrine excepts those claims from the statute of limitations.

The Supreme Court's recent decision in <u>Nat'l R.R. Passenger Corp. v. Morgan</u> addressed the continuing violation doctrine. 536 U.S. 101 (2002); <u>see also</u> <u>Jensen v. Henderson</u>, 315 F.3d 854 (8th Cir. 2002). The Court emphasized that "discrete discriminatory acts are not actionable if time barred, <u>even when they are related</u> to acts alleged in timely filed charges." <u>Morgan</u>, 536 U.S. at 122 (emphasis added). However, the court also noted that hostile environment claims are different. <u>Id.</u> at 124. "Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." <u>Id.</u> at 2074. In this case, defendant's actions, while at most related, do not constitute a continuing violation. Therefore, the court grants defendant's motion for summary judgment on plaintiff's Title VII claims prior to July 4, 2000, and her MHRA claims prior to May 1, 2000, because those claims are barred by the statute of limitations.

## IV. No Prima Facie Case of Discrimination or Reprisal

The court also grants defendant's motion for summary judgment because plaintiff has not established a prima facie case discrimination or reprisal.

### A. Discrimination Based Upon Race

Plaintiff claims defendant discriminated against her based upon her race. She specifically alleges disparate treatment and harassment. The court considers each argument in turn.

#### 1. Disparate Treatment Claim

Plaintiff impliedly concedes her disparate treatment claim by failing to put forth any evidence showing that defendants treated similarly situated individuals differently. Because plaintiff failed to establish a prima facie case of disparate treatment, the court grants defendant's motion for summary judgment on that claim. See Smith v. DataCard Corp., 9 F. Supp. 2d 1067, 1079 (D. Minn. 1998)(dismissing race-based disparate treatment claim where plaintiff failed to prove that similarly-situated white employees were treated differently).

#### 2. Harassment

The court turns its analysis to plaintiff's harassment claim.[1]

---

[1] Under Title VII, it is unlawful for an employer to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Harassment of an (continued...)

Hostile work environment harassment occurs when "the workplace is permeated with 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" Harris v. Forklift Sys., Inc. 510 U.S. 17, 21 (1993)(citations omitted). To sustain a claim against an employer for a racially hostile work environment, an employee must show that: (1) he or she is a member of a protected group, (2) he or she was subjected to unwelcome harassment, (3) the harassment was based upon race, (4) the harassment affected a term, condition, or privilege

---

[1](...continued)
employee based on a prohibited factor, including race, is therefore prohibited conduct under Title VII. Palesch v. Missouri Comm'n on Human Rights, 233 F.3d 560, 566 (8th Cir. 2000).

The MHRA also prohibits reprisal:

> **Subd. 7. Reprisals.** It is an unfair discriminatory practice for any individual who participated in the alleged discrimination as a perpetrator, employer, labor organization, employment agency, public accommodation, public service, educational institution, or owner, lessor, lessee, sublessee, assignee or managing agent of any real property, or any real estate broker, real estate salesperson, or employee or agent thereof to intentionally engage in any reprisal against any person because that person:
>
> (1) Opposed a practice forbidden under this chapter or has filed a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter; or
>
> (2) Associated with a person or group of persons who are disabled or who are of different race, color, creed, religion, sexual orientation, or national origin.

Minn. Stat. 363.03, subd. 7.

of employment and (5) the employer knew or should have known of the racially discriminatory harassment and failed to take prompt and effective remedial measures to end the harassment. Willis v. Henderson, 262 F.3d 801, 808 (8th Cir 2001); Robinson v. Valmont Indus., 238 F.3d 1045, 1047 (8th Cir 2001). The complained of conduct must have been severe or pervasive enough to create an objectively hostile work environment. Harris v. Forklift Sys., Inc. 510 U.S. at 17.

Plaintiff alleges that she was harassed after she filed her complaint with the NWA EEOC office by being subjected to heightened scrutiny, including the 1998 ticket audit, checking up on her at work, calling her a "troublemaker" and "giving her the cold shoulder." (Pl.'s Mem. at 20.) Plaintiff, however, fails to establish a prima facie case of harassment for three reasons: (1) she cannot establish that she was subjected to harassment based upon her race, (2) she cannot establish that the environment she faced was hostile and (3) she cannot establish that defendant failed to take prompt and effective remedial action.

**a. No Race-Based Animus**

First, plaintiff fails to provide any evidence of a nexus between the alleged harassment and her race. While plaintiff asserts that defendant placed her on a last chance agreement and scrutinized her more carefully because of her race, the undisputed and overwhelming evidence illustrates that both were a result of her

unauthorized ticket upgrades. For instance, plaintiff admits that she only received heightened scrutiny from Gross, one of her managers, after she was placed on the last chance agreement and that before she was placed on the last chance agreement Gross did nothing to indicate that he had any race-based prejudice against her. (Noaker Aff. Ex. 7 at 155.) Further, she admits that she only suspects but has no facts to suggest that defendant investigated plaintiff's unauthorized upgrades of Faulkner because of her race. (Noaker Aff. Ex. 7 at 155. Such suspicion, without more, is insufficient to withstand summary judgment. Because no evidence indicates that she was placed on the last chance agreement, received heightened scrutiny or was terminated because of her race, her hostile work environment claim fails.

**b. No Hostile Environment**

Additionally, plaintiff does not present any evidence to create a genuine dispute as to whether the environment she faced was hostile or abusive. Whether an environment is hostile or abusive "can be determined only by looking at all the circumstances." Harris v. Forklift Sys., Inc., 510 U.S. at 23. These circumstances "may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Id. Not all unpleasant conditions in the workplace create a hostile work environment. See

Willis v. Henderson, 262 F.3d at 809-10; Palesch v. Missouri Comm'n on Human Rights, 233 F.3d at 566, Willams v. City of Kansas City, 223 F.3d 749, 753 (8th Cir. 2000). More than a few isolated incidents of harassment must have occurred to establish Title VII violation. See Gilbert v. City of Little Rock, 722 F.2d 1390, 1394 (8th Cir. 1983).

In this case, plaintiff claims she was subject to a hostile or abusive working environment because of the heightened scrutiny she received. The evidence, however, does not rise to the level of an actionable hostile work environment. See, e.g., Smith, 9 F. Supp. 2d at 1079. "At best, [plaintiff's] allegations of racial harassment entail infrequent, sporadic events which do not violate [42 U.S.C. § 1981, Title VII or MHRA]." Id. For that reason too, the court grants defendant's motion for summary judgment on plaintiff's claim of harassment.

**c. Prompt and Effective Remedial Action was Taken**

Finally, plaintiff cannot establish that defendant failed to take prompt and effective remedial measures to end the only racial harassment plaintiff actually faced - the racial harassment by the racist passenger and subsequent conduct by two supervisors. It is undisputed that after plaintiff reported the harassment by the racist passenger and her supervisors, defendant immediately investigated her claims, instructed the passenger that he was not welcome on any future NWA flights, disciplined the two supervisors

involved in the incident and engaged in retraining. See Woodlund v. Joseph T. Ryerson & Son, Inc., 302 F.3d 839, 843-44 (8th Cir. 2002)(affirming grant of summary judgment due to prompt and adequate employer responses to harassment); Robinson v. Valmont Indus., 238 F.3d 1045, 1047 (8th Cir. 2001)(same). Because plaintiff fails to establish a prima facie case of hostile work environment, the court grants defendant's motion for summary judgment on that claim.

**B. Reprisal**

Plaintiff alleges that defendant retaliated against her after she filed her complaint with the NWA EEOC office in violation of Title VII and MHRA. 42 U.S.C. § 2000e-3(a) provides in part: "It shall be an unlawful employment practice for an employee to discriminate against any of his employees ... because [s]he has opposed any practice made an unlawful employment practice by this subchapter ..." 42 U.S.C. § 2000e-3(a). Similarly, the MHRA states:

> It is an unfair discriminatory practice for any individual who participated in the alleged discrimination as a[n] ... employer ... or employee or agent thereof to intentionally engage in any reprisal against any person because that person: (1) opposed a practice forbidden under this chapter or has filed a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter...

Minn. Stat. § 363.03, subd. 7.

The legal framework articulated by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) governs the

court's analysis of reprisal under Title VII and the MHRA. See, e.g., Stevens v. St. Louis Univ. Med. Ctr., 97 F.3d 268, 270 (8th Cir. 1996)(applying analysis under Title VII); Smith v. DataCard Corp., 9 F. Supp. 2d 1067, 1080 (D. Minn. 1998) (applying analysis under the MHRA). To succeed on a reprisal claim under either statute, plaintiff has the initial burden of proving (1) participation in a protected activity, (2) an adverse employment action and (3) a causal connection between the two occurrences. See, e.g., Stevens, 97 F.3d at 270; Kiel v. Select Artificials, Inc., 169 F.3d 1131, 1136 (8th Cir. 1999). The defendant may then rebut the plaintiff's case by advancing a legitimate, nonretaliatory reason for the adverse employment action. Stevens, 97 F.3d at 271. If the defendant makes this showing, the plaintiff must show that the proffered reason was a pretext for illegal retaliation. Id.

In this case, plaintiff fails to put forth a prima facie case of harassment because she fails to establish any causal connection between the protected activity - filing a complaint with the NWA EEOC - and the adverse employment actions she alleges she suffered - namely placement on a last chance agreement, heightened scrutiny and termination. Plaintiff makes two arguments to connect the protected activity and the alleged adverse employment actions: (1) the timing of the events and (2) the alleged differential treatment she received before and after she made the complaint. Both arguments fail.

First, despite plaintiff's contention, the timing of the events alone does not establish a causal connection between the plaintiff's conduct and the adverse employment action she suffered. The causal connection element may be proven through circumstantial evidence, including "'a showing that the employer has actual or imputed knowledge of the protected activity and the adverse employment action follows closely in time.'" Smith v. DataCard Corp., 9 F. Supp. 2d 1067, 1080 (D. Minn. 1998)(quoting Hubbard v. United Press Int'l, Inc., 330 N.W.2d 428, 445 (Minn. 1983)). However, as the Eighth Circuit Court of Appeals stated in Kiel, "more than a temporal connection between the protected conduct and the adverse employment action is required to present a genuine factual issue on retaliation." Kiel, 169 F.3d at 1136. In this case, plaintiff presents little more than a temporal connection between her complaints and the adverse employment actions she alleges she suffered, which is insufficient to establish a causal connection.

Second, plaintiff erroneously claims that she may use herself as a comparable employee and then argues that she was treated differently before and after her protected conduct. Even if the court were to conclude that it could use plaintiff as a comparable employee, plaintiff's argument fails because plaintiff was not similarly situated before and after her complaint. After her

complaint, it is undisputed that defendant discovered plaintiff's unauthorized ticket upgrades. This critical difference destroys any causal connection.

However, even if plaintiff could establish a prima facie case of reprisal, which plaintiff cannot, defendant provides a legitimate, nonretaliatory reason for its actions. The undisputed evidence establishes that defendant placed plaintiff on the last chance agreement due to her improper ticketing procedures and terminated her for the same reason. As the Eighth Circuit Court of Appeals emphasized in Kiel, "although contesting an unlawful employment practice is protected conduct, the anti-discrimination statutes do not insulate an employee from discipline for violating the employer's rules...." Kiel, 169 F.3d at 1036.

Finally, plaintiff presents no evidence showing that defendant's legitimate reason is pretexual. In fact, plaintiff does not dispute her underlying conduct and there is no evidence that defendant treated plaintiff any more harshly than it treated other employees who engaged in similar misconduct. As defendant points out, the evidence shows that plaintiff's discipline was consistent with that given to similarly situated employees. (Schuckman Tr. 30-33; Stewart Tr. 41-47). Defendant has identified several examples of similarly situated employees who received similar treatment (Schuckman Tr. 39-45) and plaintiff has not identified any similar employees who received lighter discipline. Thus, the court grants

summary judgment for defendant on plaintiff's reprisal claim because plaintiff fails to establish a prima facie case of reprisal and, alternatively, fails to establish that defendant's legitimate, non-discriminatory reason for its actions are pretexual.

**CONCLUSION**

Accordingly, **IT IS HEREBY ORDERED** that:

1. Defendant's motion for summary judgment [Docket No. 8] is granted in its entirety and

2. Plaintiff's claims are dismissed with prejudice.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: April 7, 2003

David S. Doty, Judge
United States District Court

# UNITED STATES DISTRICT COURT
## District of Minnesota

700 Federal Building
316 North Robert Street
St. Paul, MN 55101

202 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415

417 Federal Building
515 West First Street
Duluth, MN 55802

## CIVIL NOTICE

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

> ***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.